## Louis V. Lamm v. The State.

### No. 5317.    Decided March 12, 1919.

Wife Desertion—Insufficiency of the Evidence.

Where, upon trial of willfully deserting, neglecting and refusing to provide for his wife, there was no evidence that defendant deserted his wife, and it was insufficient to show that she was in necessitous circumstances or that he failed to provide for her, the conviction could not be sustained.

Appeal from the County Court of Kendall. Tried below before the Hon. J. W. Lawhon, judge.

Appeal from a conviction of wife desertion; penalty, a fine of $25.

The opinion states the case.

*W. C. Linden & Joe H. H. Graham,* for appellant.

*E. A. Berry,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted under a charge of wilfully deserting, neglecting and refusing to provide for his wife.

The evidence discloses that appellant married the daughter of a man named Reinhard about seven years prior to the trial of this case. Reinhard testified he bought them a home for which he paid $2,200. After living on it for sometime appellant suggested to his father-in-law that he would like to go on one of his farms. Reinhard permitted this. Appellant lived upon the farm a while. When this move was made he sold the home in town given him by his father-in-law and purchased another town home for $1,300. The remainder of the money seems to have been invested in Jersey cows for dairy purposes. In December 1917 appellant's wife gave birth to her second child. Her mind became deranged and appellant moved back to town, and for a month lived with his father-in-law, and then moved to his home. Appellant went into the jitney business. The living made from it was rather precarious; at least not very satisfactory. He went to Camp Stanley and secured work. This gave him a definite and certain employment. He spent his time pretty closely about home until his wife's mind improved before going to Camp Stanley. Camp Stanley is a few miles away from his residence. Reinhard's feelings were quite hostile to defendant. He testified there were some financial transactions between himself and defendant. Among other things, he stated

defendant owed him a note for one hundred dollars, and had owed it for a number of years, and that at one time he advanced him $32 to pay for repairs on the radiator of his automobile. Some of the Jersey cattle taken to the farm by appellant were sold and Reinhard got the proceeds; $50 at one time and $80 at another, which Reinhard mentions. He still claimed that appellant owed him the one hundred dollars which was of about six years standing. He seems to know nothing about the amount of money appellant earned, or furnished his family, or what necessaries appellant furnished his wife. Reinhard says that he would send them butter and eggs, and also paid one small grocery bill at Mr. Davis' grocery store. He testifies further that with appellant's permission he took appellant's wife to San Antonio and left her with an aunt of appellant, but he did not know who paid her expenses in San Antonio; that he himself did not, and that after she had been there two or three weeks, without appellant's knowledge or consent he went for and brought her to his house where she was still living at the time of the trial. That he went to appellant's house and locked the door and nailed up the windows and carried the keys off and kept them, and still has them. He says that the things he had furnished his daughter and given her amounted to about one hundred dollars in value.

Appellant's testimony is that he went to the farm mentioned and remained a while; that his wife's mind became deranged; that she gave birth to a child in 1917; that he moved to town, and shortly after moving her to town went to his own home where he took care of her; that he went in the jitney business to make a living; that it was not very satisfactory way of earning a living by such precarious jobs that after his wife got well and recovered her mind he went to work at Camp Stanley; that he worked there and received his wages and would go home at night. That the expense of running back and forth, the cost of gasoline and other expenses were beyond what he thought was proper, so he limited his visits to three times a week, working in the day and going home spending the night. That he furnished his wife all the money he could spare, and that he furnished her with ample groceries and necessities, amounting to something like six or seven dollars a week. In this he is sustained by two merchants with whom he and his wife traded, whose names are Davis and Wendler. Davis testified that he had done business with appellant indirectly; that he had delivered groceries to appellant's family. These groceries were paid for twice by Mrs. Mills; they were cash sales of between one and two dollars each time, and that Mrs. Mills' boy came to his store with a note from Mrs. Lamm asking for groceries for defendant, and he sent her groceries and charged them to defendant. Another time this boy came with a note and he asked if defendant was at home, and was informed

4—85 T. C. R.

that he was not, so he phoned Mr. Reinhard and asked him if he should send the groceries, and being answered in the affirmative, he sent them. This is the bill that Mr. Reinhard says he paid. He says Mrs. Mills often came over for groceries and he gave them to her and she paid for them; that he did not know whether those groceries were for Mrs. Mills or for Mrs. Lamm. He further stated at different times appellant came to his store and bought groceries and paid cash. This was before he went to work at Leon Springs. After that he did not remember whether he came to the store and bought groceries or not. The only bill of groceries ever paid for by Reinhard was the bill which he delivered to Mrs. Mills already mentioned. Wendler testified he was in the mercantile business, and was acquainted with defendant and had known him for years; that he had traded at his place a long time, and had traded there during the time he lived at Kritzberg on Reinhard's farm, and after that time when he lived in Boerne and out in Oak Park. The sales witness made to defendant were cash transactions and averaged from five to seven dollars per week for groceries. He bought groceries at the rate of from five to seven dollars per week all during the time he was at Kritzberg and at Oak Park up until the time he went to work at Camp Stanley, which was about three months before. Since that time he had not bought groceries to any considerable amount from witness. He says Reinhard did not pay him any money; that defendant paid him, and that these sales would occur anywhere from one to three times a week and were all cash sales. The witness Adler testified that he had known defendant, and that he traded with him for years; that he was a baker; that appellant bought bread from him about two or three times a week. That appellant would buy thirty to forty cents worth of bread every two or three days, and on Saturdays he usually bought more than that, and such things as ginger cake, coffee cake and stuff averaged about ninety cents to one dollar and thirty cents a week; that the defendant still buys bread from him; that while defendant lived at Oak Park he bought about thirty cents worth every other day. Mrs. Mills testified that she knew the defendant and had worked for him for some time. That she helped cook and wash. She says: "I got things at Davis' store and Mr. Reinhard sent things. I didn't work all day. I got there about nine or ten o'clock in the morning and worked until three or four o'clock in the afternoon. I was hired by Mr. Reinhard and I was discharged because the defendant said he could not pay any longer. The defendant paid me nine dollars for the time I was there. I was not there at night and I don't know whether Mr. Lamm was there at night or not." Mrs. Layton testified that she worked sometimes at defendant's place in Mrs. Mills' place when Mrs. Mills wanted to go away any where. She saw while she was there bread, bacon and potatoes, but they were short of wood.

Appellant testified to buying groceries and staying with his wife until she recovered from her insanity and sickness, and that he worked around home and took care of her and furnished her a home and the necessities, and that when his wife recovered sufficiently he went to Camp Stanley to work, and went home at night until he was spending what he thought too much money in going home every night, and that he lessened his visits to three nights a week, making arrangements to live cheaper at Camp Stanley, and that he furnished his wife with money with which to buy groceries and the necessities of life, and that he furnished her all the money he could make and spare, and that it was out of this money she paid for the groceries at Davis' and Wendler's where she did make purchases, and that on one of his visits home his wife asked his permission or if he had any objection to her going to San Antonio with her father; that her father would take her if she would go; that he gave his permission, and she went to San Antonio where he made arrangements to pay her board while she remained and did pay her board, except in part, which he agreed to pay in work to his aunt with whom his wife was staying. Without his knowledge, shortly before the institution of this suit, Reinhard went to San Antonio and brought appellant's wife home to his, Reinhard's, house, and that when he ascertained that she had returned he went home and found his house locked and the windows nailed up and he was unable to get in his home. This prosecution was then instituted. The witness Reinhard also testified: "It is a fact that I offered to dismiss this prosecution if this property which he sold was deeded back." It seems that appellant owed $350 on the place, and that there were some extra lots in addition to that upon which the residence was situated: that he sold these lots to meet outstanding obligation. Reinhard objected to this and wanted these lots deeded back, and offered to dismiss the prosecution if appellant would deed them back. This we think is a fair statement of the testimony. The wife did not testify.

We are of opinion this evidence does not show a desertion by appellant of his wife. There was no evidence of desertion, unless it is found in the fact that he had not lived with her since his father-in-law took her to his house just before the institution of this prosecution. If there is any desertion in this act, it occurs to us it was by the wife; at least her father testifies he took her to his house, and practically took possession of appellant's home and locked and nailed it up. Nor do we believe the evidence sufficient to show that she was in necessitous circumstances, or that he failed to provide for her. The testimony seems to be uncontroverted that while she was living at home during his absence at Camp Stanley he furnished her money with which she purchased groceries. This is shown by himself and the other witnesses mentioned. He made but few if any accounts: his wife was paying cash for groceries, and

appellant furnished the money to his wife, and he is not contradicted by the testimony. Take the case as it stands, we are of opinion the evidence is not sufficient to support the conviction.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*